GOLD MEDAL FARMS, INC., Respondent, *v.* RUTLAND COUNTY CO-OPERATIVE CREAMERY, INC. et al., Appellants.

Third Department, December 31, 1959.

*McChesney & Kenney* (*Thomas V. Kenney* of counsel), for Rutland County Co-Operative Creamery, Inc., appellant.

*Murphy, Aldrich, Guy, Broderick & Simon* (*William E. Noonan* of counsel), for Vermont Milk and Cream Company, Inc., and another, appellants,

*John P. Weatherwax, Martin A. Fromer* and *James M. Strang* for respondent.

Coon, J. In the interest of clarity and brevity the plaintiff-respondent, Gold Medal Farms, Inc., will be designated herein "Gold Medal"; the defendant-appellant Rutland County Co-Operative Creamery, Inc., will be "Rutland", the defendant-appellant Vermont Milk and Cream Company, Inc., will be designated "Vermont", and the defendant-appellant The Borden Company will be designated "Borden".

The complaint alleges three causes of action which may be briefly described as follows: (1) against Rutland for breach of contract for the sale of milk; (2) against Vermont and Borden for wrongfully inducing such breach; and (3) against Rutland, Vermont and Borden for conspiring to and injuring Gold Medal's business. Rutland interposed two counterclaims. The court below has awarded damages to Gold Medal on all three causes of action and has dismissed both counterclaims.

Rutland is a co-operative corporation which receives, handles and disposes of milk produced by its member producers. Plaintiff, Gold Medal, and Rutland entered into a written contract whereby Gold Medal agreed to buy and Rutland to sell all of the milk received by Rutland during the year beginning on April 1, 1950 and ending on March 31, 1951. The price basis was to be that provided for in the Federal and State Milk Marketing Orders for the New York Metropolitan Milk Marketing Area for the period in which deliveries were made. In addition thereto Rutland was to be paid a "handling charge" of 20 cents per hundredweight on the first 450 cans delivered daily. Rutland delivered its milk pursuant to the contract until October 1, 1950, when it ceased deliveries and refused to deliver any milk thereafter. Rutland made it abundantly clear, prior to October 1 that it did not intend to deliver any milk to Gold Medal after October 1 or during the remaining six months of the contract period, and entered into a contract to sell its milk after October 1 to Vermont. Rutland does not dispute the breach, but asserts, with the other appellants, that no recovery may be had because the contract was an illegal one.

The asserted illegality is a clause which gives Gold Medal the option of paying the "butter-fat differential" provided for in the Milk Marketing Order, on the basis of butter-fat tests of producers' milk as it is received by Rutland or on the basis of butter-fat tests of each tank of milk delivered by Rutland to Gold Medal. It is urged that this is contrary to the Milk Marketing Order, which it is contended, requires the former alternative method. It is not at all clear that the Milk Marketing

Order does require the " producer test " basis in sales between " handlers ". Assuming that it does, however, the contract in question was subject to the Milk Marketing Order and the rules and regulations thereunder, and the Market Administrator is given broad powers to make and enforce adjustment, classify milk and milk products and fix differentials. Gold Medal was required to report in detail its payments for milk and the basis thereof for audit and approval by the Market Administrator. Presumably if payment was made in violation of the order an adjustment would have been required and certainly could have been required, thereby removing the taint of illegality. Moreover, the difference between the two options is so slight, amounting roughly to one tenth of one per cent of the total sales, that it should not void the entire contract. Such a violation of the order, if violation there be, is not the kind of illegality which will vitiate an entire contract and render it unenforcible. (*Rosasco Creameries* v. *Cohen,* 276 N. Y. 274; *Technical Research Labs.* v. *Steigman,* 269 App. Div. 678, affd. 295 N. Y. 773; 6 Williston, Contracts [rev. ed.], § 1767.)

It is argued that the damages recoverable by Gold Medal should be limited to the damage sustained up to the time of the commencement of the action, which was December 19, 1950. Appellants rely principally upon *Paddock* v. *Hohneker Dairy* (246 App. Div. 862, affd. 272 N. Y. 419). The question of damages was not reached in the Court of Appeals in the *Paddock* case because plaintiff did not appeal from a reduction. The *Paddock* decision is contrary to the weight of authority and the cases cited therein deal with trespasses or nonpayment of installments of money to become due in the future. The rule applicable to such cases does not apply to contracts for the sale of goods. (5 Williston, Contracts [rev. ed.], § 1378.) In the instant case the vendor of the milk to be delivered in installments not only refused to deliver an installment but definitely signified its refusal to deliver any milk thereafter. Gold Medal was not bound to wait until the expiration of the contract but may treat the refusal as a breach of the entire contract and recover immediately for all damage. (*Pakas* v. *Hollingshead,* 184 N. Y. 211; *Park & Sons Co.* v. *Hubbard,* 198 N. Y. 136; *Losei Realty Corp.* v. *City of New York,* 254 N. Y. 41; *Standard Oil Co. of N. Y.* v. *Siraco,* 226 App. Div. 266.) Indeed, plaintiff is not only entitled to recover all damages in one action but, in this State must. (*Pakas* v. *Hollingshead, supra; Park & Sons Co.* v. *Hubbard, supra.*)

Appellants also complain that the measure of damages and the method of computation adopted by the court below are

improper. There is evidence that no milk was available to plaintiff in the area of Rutland's plant in Vermont, but the record discloses a clear market price for milk in New York City and the availability of milk there. The parties to the contract contemplated that the milk which was the subject matter of the contract would be sold in New York City, and the price to be paid under the contract was determined by the price fixed by the order for New York. In effect, the court took the price fixed by the Market Administrator for the month, added 20 cents per hundredweight "handling charges" called for by the contract, plus transportation charges from Rutland's plant in Vermont to New York City, as the contract cost to Gold Medal in New York City if the milk had been delivered under the contract. The court then took the highest weekly price of "spot milk" (milk not under contract and sold through brokers in New York City on the open market) in New York City, averaged the weekly price to obtain a monthly price, and thereby fixed the market value for a particular month in New York. The contract price in New York was subtracted from the market price in New York to arrive at plaintiff's damage, which was computed at $44,285.35.

Appellants complain because the "highest" weekly price was used in determining the market price rather than the "average" price over the whole period. There is very little variance in the price during the week when there is any variance at all, and the court could well have determined on this record that plaintiff would have been obliged to pay the highest price to obtain milk. The method adopted by appellants in reaching what the expert witness called average or "mid-point" market price does not seem fair, because the quantity of milk sold for a given price was given no consideration. For instance, if one can of milk sold for $5 and 10 cans sold for $6 each, appellants' witness would call the "average" price $5.50. The court below, in adopting the plaintiff's measure of damages, was dealing with a factual question, and the measure of damages used seems as fair as any that could be used under the unusual circumstances of this case. (Personal Property Law, § 148.)

Appellants further contend (for the first time on this appeal) that it was error to allow interest on plaintiff's claim. If the law of New York is applicable interest is allowable by statute. (Civ. Prac. Act, § 480.) It is urged that the contract was to be performed in Vermont, hence the Vermont law applies and, absent any proof of the law of Vermont, it is presumed to be the same as the common law of New York. It is then urged that the common law of New York does not permit interest on unliqui-

dated claims. The contract was made in New York; its subject matter was milk which the contract required to comply with New York City health standards; the contract price was fixed by New York State Milk Marketing Orders; the issue in the action involves only an interpretation of the contract (nonperformance being admitted), and there is nothing in the contract indicating an intention that the law of any other jurisdiction should apply. Under these circumstances the law of New York should apply. (*Swift & Co.* v. *Bankers Trust Co.*, 280 N. Y. 135; *Bitterman* v. *Schulman*, 267 App. Div. 858, affd. 293 N. Y. 678.)

Next, appellant Rutland contends that its two counterclaims should have been allowed. The first counterclaim seeks to recover the sum of $2,295 as the "handling charge" which Gold Medal agreed to pay for the month of September, 1950. The amount is not in dispute, nor is the fact of nonpayment. It is elementary that Gold Medal may recover only compensatory damages for breach of contract, and having recovered such, is made whole as though the contract had been performed. Gold Medal then is obligated to pay the contract price for goods actually delivered. Otherwise Gold Medal would get a bonus over and above compensatory damages and Rutland would be paying a penalty. This counterclaim should be allowed, with interest from October 1, 1950.

The other counterclaim seeks to recover the sum of $1,467.90 computed to be the amount due for milk delivered during the entire six-month period if the butter-fat differential were computed on the basis of "producer tests" instead of "tank tests". The contract gave Gold Medal its option. Rutland has accepted payment on the basis of "tank tests" without previous protest. We have already determined that this clause of the contract was not illegal as between handlers. The second counterclaim was properly dismissed.

Next, appellants Vermont and Borden contend that the judgment against them for wrongfully inducing the breach of contract is not supported by the evidence. It appears that Vermont is a subsidiary of Borden and its business was to procure milk for Borden's operations in New York City. The two corporations have interlocking officers and management, and there would seem to be no question that these two appellants were fully aware of the acts of each other and acted in concert. We do not agree with these appellants that they must have full knowledge of the detailed terms of the existing contract between Rutland and Gold Medal, and we find nothing in the authorities

cited by these appellants which so hold. Neither do we agree with appellants that some additional wrong, such as actual malice, fraud or deceit, independent of the actual inducement of the breach with knowledge of the contract is essential. It would seem sufficient to show that appellants, with actual knowledge of the existence of the contract between Rutland and Gold Medal, intentionally made an offer of better terms to Rutland with the intent of persuading it to breach its contract. (*Campbell* v. *Gates*, 236 N. Y. 457; *Terry* v. *Dairymen's League Co-Op. Assn.*, 2 A D 2d 494; *Posner Co.* v. *Jackson*, 223 N. Y. 325; *Hornstein* v. *Podwitz*, 254 N. Y. 443.)

It is directly established in the record that officers of Vermont and Borden knew as early as April, 1950, that Rutland was under contract to sell its milk to Gold Medal until April, 1951. It also appears that there was an oral " understanding " in late July or early August of 1950 between Rutland and Vermont that Vermont would get Gold Medal's milk from and after October 1, 1950. This actually occurred, and the terms of the " understanding " were subsequently embodied in a written contract between Rutland and Vermont, which called for the payment of some $6,194.00 more than the amount called for by Gold Medal's contract with Rutland for the remaining six months of the contract period. Vermont had attempted during prior years to obtain the contract for Rutland's milk supply. This was legitimate competition because the efforts were made at the expiration of an existing contract. However, it is an indication that Vermont was thoroughly familiar with the whole setup. During the Summer of 1950 Vermont and Borden knew that there would be a short supply of milk in the metropolitan market in the Fall of 1950. There are other indications in the record that Vermont was extremely anxious to obtain Rutland's milk supply. With knowledge of the existing contract between Rutland and Gold Medal, Vermont made a better financial offer to Rutland which was followed by the breach of the contract between Rutland and Gold Medal and the delivery of Rutland's milk to Vermont. The fact that Rutland's officers were dissatisfied with the Gold Medal contract and contemplated, or at least discussed, breaking the contract in any event, is not controlling. The fact remains that it was not actually broken until after a better arrangement was made with Vermont. Moreover, Vermont did not actually receive any of Gold Medal's milk or enter into a formal contract until after it had received written notice from Gold Medal that it would be held responsible for so doing. We think it was permissible for the trier of the facts to draw from

the evidence the inference that Vermont and Borden, with full knowledge of the facts, intentionally made a better offer to Rutland with the intent of bringing about a breach of its contract with Gold Medal. There is other evidence that shortly after the breach of the contract Vermont loaned Rutland a very substantial sum of money, without interest, which was repaid from premiums over and above the contract price paid for milk. The evidence adequately supports the liability of Vermont and Borden for the same damage found against Rutland resulting from the breach of contract.

All of the appellants urge that the evidence does not support the third cause of action for conspiracy to injure and injuring Gold Medal's business in general. We agree with this contention. It is certain that appellants cannot be charged with " permanently " depriving Gold Medal of Rutland's milk supply. The contract had but six months to run at which time it was Gold Medal's privilege to attempt in any legal way to regain the supply. No direct steps were taken by appellants to prevent Gold Medal from obtaining milk elsewhere. We see nothing in the record which would support the finding that appellants intended to destroy or injure Gold Medal's business generally.

The judgment on the first cause of action should be modified by allowing the first counterclaim in the amount of $1,487.70 [corrected to $2,295; see 10 A D 2d 584] and interest as an offset, and as so modified should be affirmed; the judgment against Vermont and Borden on the second cause of action should be affirmed with the same modification; with costs to respondent against all appellants. The judgment on the third cause of action should be reversed, without costs.

FOSTER, P. J., BERGAN, GIBSON and HERLIHY, JJ., concur.

The judgment is modified in the following respects:

Judgment reversed, on the law and facts, insofar as it dismisses the first counterclaim alleged in the answer of defendant, Rutland County Co-operative Creamery, Inc., and said counterclaim is allowed in the sum of $1,487.70 [corrected to $2,295; see 10 A D 2d 584] and interest.

Judgment on the first cause of action alleged in the complaint is modified by deducting the amount of the above counterclaim therefrom, and, as so modified, is affirmed.

Judgment on the second cause of action alleged in the complaint is modified in the same manner, and, as so modified, is affirmed.

Judgment on the third cause of action alleged in the complaint is reversed, on the law and facts, and such cause of action is dismissed.

As so modified the judgment is affirmed, with costs to respondent against all appellants.

Settle order.