OPINION OF THE COURT
David B. Saxe, J.
This motion requires an examination of the breadth and scope of the common-law tort of tortious interference with contract.
*821 The plaintiff, V. Marangi Carting Corp. (Marangi), is a commercial waste removal company. One of its customers is defendant Judex Enterprises, Inc., which operates a restaurant known as "Spagheteria”; Marangi and Judex entered into a contract on December 13, 1993 pursuant to which Marangi would collect and dispose of Judex’s waste at a rate of $141.34 per week for a period of five years (with a possible five-year renewal). However, in February 1996, defendant BFI of Metro New York (BFI), another commercial carting company, began circulating brochures offering rates lower than those offered by Marangi. It is alleged that BFI was aware of the contract between Marangi and Judex. On February 23, 1996, Judex terminated its agreement with Marangi, and entered into an agreement with BFI for its waste removal.
As against Judex, Marangi properly asserts a cause of action sounding in breach of contract, and the contract itself contains a liquidated damages clause providing for damages of 65% of the aggregate service charge remaining on the terms of the agreement.
However, as against BFI, a company with no contractual duty toward Marangi, the cause of action asserted is for tortious interference with contractual relations, and seeks compensatory and punitive damages.
BFI now moves to dismiss the complaint pursuant to CPLR 3211 (a) (7), on the grounds that it fails to state a cause of action upon which relief may be granted. The question it raises is, does the alleged conduct by BFI, if proven, entitle the plaintiff to relief as against BFI?
Analysis must begin with Guard-Life Corp. v Parker Hardware Mfg. Corp. (50 NY2d 183 [1980]), in which the Court of Appeals adopted and employed the definitions and analysis contained in the Restatement (Second) of Torts regarding the interference with contract tort. The Court considered a competitor’s interference with a contract which was voidable for lack of mutuality, equated such contracts with contracts terminable at will, and distinguished both types of contracts from those for a definite term. It classified the former in the same category as interference with prospective business relations, which only succeeds as a tort where the interferer employed " 'wrongful means’ ” such as physical violence, fraud or misrepresentation, civil suit or economic pressure (50 NY2d, at 191-192).
In comparison, the Court noted, the standard for interference with an extant contract for a definite period is less *822 demanding; indeed, the Court recognized that "greater protection is accorded an interest in an existing contract (as to which respect for individual contract rights outweighs the public benefit to be derived from unfettered competition)” (Guard-Life Corp. v Parker Hardware Mfg. Corp., supra, at 191).
Exactly what kind of behavior suffices to state a cause of action for tortious interference with an existing contract for a definite term, rather than one voidable or terminable at will? It is clear that "wrongful means” is not necessary to prevail on a cause of action for tortious interference with such a contract. What, if anything, may a competitor safely do or say to a prospective customer under contract with another?
Clearly, the mere fact that the interferer was acting as a competitor does not in itself relieve it of liability (see, Restatement [Second] of Torts § 768 [2]). But conversely, not all conduct of competitors toward prospective future customers constitutes tortious interference with contractual relations.
The Guard-Life case (supra) cites the Restatement as follows: " 'One who intentionally and improperly interferes with the performance of a contract * * * between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.’ ” (50 NY2d, at 189, citing Restatement [Second] of Torts § 766 [1977].) Recognizing that the word "improperly” is the keystone of the definition, the Restatement goes on to discuss how it is determined whether intentional interference with a contract is improper; " 'whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another’ ” (50 NY2d, at 190, citing Restatement, op. cit, § 767).
Plaintiff emphasizes a remark included in dictum of the Court in Guard-Life (supra), which noted that "[w]ith respect to a contract for a definite term, persuasion to breach alone, as by an offer of better terms * * * has been sufficient to impose liability on one who thereby interferes with performance” (50 NY2d, at 194, citing Gold Medal Farms v Rutland County Co-Op. Creamery, 9 AD2d 473; Gonzales v Reichenthaler, 233 NY 607). That comment was recently cited by Justice Ramos in denying summary judgment in a similar action brought by the plaintiff against BFI following another customer’s termination of the contract (see, Marangi Carting Corp. v Levana Pastries, Sup Ct, NY County, Nov. 21, 1995, index No. 110245/95).
*823 However, it is critically important to clarify the type of "offer of better terms” which is necessary to support a finding of liability. We must ensure that the freedom to conduct normal business is not unduly hampered by the existence of this tort.
Restatement (Second) of Torts § 766 provides such a clarification. Comment m to the section explains interference by means of inducement to breach a contract through an offer of better terms, and offers a distinction between tortious and nontortious conduct: "Another method of inducing B to sever his business relations with C is to offer B a better bargain than that which he has with C * * * A’s freedom to conduct his business in the usual manner, to advertise his goods, to extol their qualities, to fix their prices and to sell them is not restricted by the fact that B has agreed to buy similar goods from C. Even though A knows of B’s contract with C, he may nevertheless send his regular advertising to B and may solicit business in normal course. This conduct does not constitute inducement of breach of the contract. ” (Restatement [Second] of Torts § 766, comment m, at 14 [emphasis supplied].) The comment follows with an illustration of a solicitation of business that does constitute tortious interference: "A writes to B: T know you are under contract to buy these goods from C. Therefore I offer you a special price way below my cost. If you accept this offer, you can break your contract with C, pay him something in settlement and still make money. I am confident that you will find it more satisfactory to deal with me than with C.’ As a result of this letter, B breaks his contract with C. A has induced the breach.” (Restatement [Second] of Torts § 766, comment m, illustration 3, at 14.)
As the Restatement and the Court of Appeals acknowledge, " 'the law in this area [regarding interference with contract relations] has not fully congealed but is still in a formative stage’ ” (Guard-Life Corp. v Parker Hardware Mfg. Corp., supra, at 189, citing Restatement [Second] of Torts ch 37, Introductory Note, at 5). Thus, blind adherence to the apparent holdings of older cases should be avoided, at least until their reasoning and conclusions are compared with the well-thought-out reasoning of the American Law Institute in its Restatement (Second) of Torts.
Review of the cases cited by the Court of Appeals in Guard-Life (supra), concerning offers of better terms which constituted tortious interference, reflects none in which the complained-of conduct consisted solely of regular advertising and general solicitation of business from a class of potential *824 future customers. Rather, each concerns conduct toward a particular, targeted competitor in order to induce a breach of a specific contract for a unique or exclusive product. For instance, in Gonzales v Reichenthaler (233 NY 607 [1922], supra, affg 197 App Div 277 [2d Dept 1921]), a Coney Island game operator induced a game manufacturer to provide it with a game just like one the manufacturer provided to his neighboring competitor, despite an exclusive contract between the neighbor and the manufacturer. In Gold Medal Farms v Rutland County Co-Op. Creamery (9 AD2d 473 [3d Dept 1959], supra), a milk retailer, knowing of the co-op’s exclusive contract to provide another retailer with its entire milk supply, induced the co-op to breach that contract by making it an offer of better terms.
Plaintiff seeks to have this court rely upon the Court’s statement in Gold Medal Farms (supra) that "It would seem sufficient to show that appellants, with actual knowledge of the existence of the contract between Rutland and Gold Medal, intentionally made an offer of better terms to Rutland with the intent of persuading it to breach its contract” (9 AD2d, at 479). However, based upon the analysis in the Restatement (Second) of Torts, discussed supra, I do not believe the law permits a finding of tortious conduct merely upon proof that an offer of better terms was made. Indeed, I note that in the Gold Medal Farms case, aside from the offer of better terms, there was evidence that the interferer / competitor also "loaned [the co-op / customer] a very substantial sum of money, without interest, which was repaid from premiums over and above the contract price paid for milk” (9 AD2d, at 480, supra). This fact brings the situation in that case in line with the illustration contained in the Restatement, demonstrating how an offer of better terms can cross the line into tortious interference with a particular contract by sweetening the deal with something extra in order to induce the customer to breach its contract with its other provider (see, Restatement [Second] of Torts § 766, comment m, illustration 3, at 14).
I conclude that a claim for tortious interference with an existing contract based upon an offer of better terms cannot be founded solely upon an offer made in the normal course of general solicitation of business for fungible services in a mass market, by normal methods such as circulating flyers to potential customers. If the law were otherwise, no one who advertised his prices would ever be safe from such a claim if it entered into a contract with a customer after the customer breached its contract with the more expensive competitor.
*825 Accordingly, because the alleged facts cannot alone support the cause of action, the motion is granted and the complaint is dismissed.