Salah **TURKMANI**, Plaintiff,

v.

**THE REPUBLIC OF BOLIVIA,**
Defendant.

No. CIV.A. 97–1563.

United States District Court,
District of Columbia.

Oct. 28, 2002.

Marcia Ann Wiss, Hogan & Hartson, L.L.P., Andrew Neill Vollmer, Wilmer, Cutler & Pickering, Washington, DC, David Dunn, Hogan and Hartson, L.L.P., New York City, for plaintiff.

Alan A. D'Ambrosio, Winston & Strawn, New York City, Thomas Matthew Buchanan, Michael T. Dyson, Winston & Strawn, Washington, DC, for defendant.

## MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART
The PLAINTIFF'S MOTION TO ALTER OR
AMEND The FINAL JUDGMENT

URBINA, District Judge.

## I. INTRODUCTION

After the court resolved the parties' cross-motions for summary judgment, this Foreign Sovereign Immunities Act case comes once again before the court, this time on the issue of amendment of the final judgment. Pursuant to Federal Rule of Civil Procedure 59(e), the plaintiff moves the court to alter or amend the court's order entering final judgment in the case. Specifically, the plaintiff asks the court to change both the damages amount and the pre-judgment interest rate imposed by the court in its final-judgment order. In contrast, the defendant sees nothing wrong with the court's final-judgment order and argues against the plaintiff's motion. After consideration of the parties' submissions, the relevant law, and the record of this case, the court denies the plaintiff's motion to alter or amend the final judgment as to damages but grants the plaintiff's motion as to pre-judgment interest.

## II. BACKGROUND [1]

The plaintiff is a resident of the District of Columbia and is the president, director, and sole shareholder of the Mega Company ("Mega"). *Turkmani v. Republic of Bolivia*, 193 F.Supp.2d 165, 167 (D.D.C. 2002). The defendant is a foreign state located in South America. *Turkmani*, 193 F.Supp.2d at 167.

In October 1968, the defendant issued more than $67 million in "sinking fund" bonds.[2] *Turkmani*, 193 F.Supp.2d at 167. On February 4, 1969, the defendant entered into a fiscal agency agreement with the Bank of New York whereby the defendant established a sinking fund at the Bank of New York for purchasing and redeeming bonds. *Id.* The defendant appointed the Bank of New York as fiscal agent for the payment of principal and interest on the bonds and as sinking fund agent for the administration of the sinking fund. *Id.* at 177. The bonds were payable and redeemable on publication of notice in New York City. *Id.*

As described in the court's summary judgment ruling and later in this opinion, Mega acquired the defendant's bonds through various transactions and subsequently transferred those bonds to the plaintiff. *Turkmani*, 193 F.Supp.2d at 167–68; *Infra* at II.. On July 8, 1997, the plaintiff filed his complaint claiming that after Mega transferred a group of the defendant's bonds to the plaintiff, the defendant breached its contractual obligations by defaulting on bond payments

---

1. The facts and procedural history of this case are fully outlined in the court's March 28, 2002 Memorandum Opinion. *Turkmani v. Bolivia*, 193 F.Supp.2d 165, 167 (D.D.C. 2002).

2. A sinking fund is "a fund consisting of regular deposits that are accumulated with inter-est to pay off a long term debt." *Black's Law Dictionary* 682 (7th ed.1999). A bond is a debt instrument promising to "pay a fixed sum of money, at a definite time, with a stated interest." *Id.* at 169. A sinking fund bond is a bond that is backed by a sinking fund. *Id.* at 174.

owed to the plaintiff. *Id.* at 167–68, 182. Accordingly, the plaintiff's complaint prays for damages in the amount of $266,312.75. *Id.* at 169; Compl. at 7; Order dated May 6, 2002 at 1. The plaintiff arrived at this figure by adding together the face value of the relevant bonds with the interest owed on them. *Turkmani*, 193 F.Supp.2d at 169. During the discovery process, however, the plaintiff amended[3] his initial total amount of damages upward to $275,673.63. *Id.*

Both parties then moved the court for summary judgment. *Turkmani*, 193 F.Supp.2d at 169. In his statement of undisputed material facts, the plaintiff described the bonds first purchased by Mega and later transferred to the plaintiff.[4] Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Statement of Undisputed Facts") at 8–13. Using the relevant bond transactions, the plaintiff calculated the total value of these bond transactions as $275,673.63, which the plaintiff now re-

quests as the proper damages award. *Id.* Similarly, the defendant presented the same bond transactions as undisputed material facts. Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Statement of Undisputed Facts") at 5–7. Unlike the plaintiff, however, the defendant did not tote up the dollar amounts associated with these transactions to reach the plaintiff's total damages figure. *Id.* Instead, the defendant insists that the proper amount of damages is the $266,312.75 identified in the complaint. *Id.*; Def.'s Opp'n to Pl.'s Mot. to Amend J. at 2–3.

On March 27, 2002, the court respectively granted and denied the plaintiff's and the defendant's motions for summary judgment. *Turkmani*, 193 F.Supp.2d at 167, 182. Neither party disputed the damages amount in their motions for summary judgment. The plaintiff filed a motion for entry of final judgment on April 23, 2002. Accompanying that motion was the plaintiff's proposed final-judgment order[5]

---

**3.** The court notes that while the plaintiff apparently amended his response to the defendant's first set of interrogatories to reflect the higher $275,673.63 figure, the plaintiff did not attempt to amend his complaint accordingly or address the damages issue in his motion for summary judgment.

**4.** First, on August 2, 1995, Mega purchased 18 bonds owned by Mr. Donald Hayes, which had a total principal face value of $9,900.00 and attached interest coupons totaling $5,346.00. Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. at 8. Second, on or about August 10, 1995, Mega purchased certain bonds owned by Ms. Angela D. Dandini, which had a total principal face value of $209,500.00 and attached interest coupons totaling $43,995.00. *Id.* at 9–10. Third, Mega purchased additional bonds with face values totaling $9,053.20 and interest totaling $899.92. *Id.* at 11. Mega's final purchase of bonds occurred on or about October 1995, when it purchased certain bonds owned by Ms. Florence Peet, having a total principal face value of $4,993.21 and attached interest coupons

totaling $1,039.50. *Id.* at 12. The plaintiff thereby deduced that the combined total of these transactions was $275,673.63. *Id.* at 13. The court notes, however, that this amount is mathematically incorrect. When adding the bond purchases together, the court does not reach the same figure as that claimed by the plaintiff.

**5.** According to Local Civil Rule 7.1(c), a motion must be accompanied by a proposed order. LCvR 7.1(c). If the court grants a motion, the accompanying proposed order submitted by the movant may help to expedite the court's ruling on the motion. The plaintiff complied with Local Civil Rule 7.1(c) by submitting a proposed order alongside the plaintiff's motion for entry of final judgment. *Id.* As noted, because it was unclear how the plaintiff had arrived at the $275,673.63 damages amount listed in the proposed order, however, the court did not adopt the plaintiff's proposed order, but instead issued its own order entering final judgment in the case in the amount of $266,312.75. Order dated May 6, 2002 at 1.

awarding monetary damages in the amount of $275,673.63 and pre-judgment interest at a rate of six percent. Pl.'s Proposed Final J. Order at 1–2. The defendant submitted an opposition brief that addressed certain other matters, and did not challenge either the damages amount or the pre-judgment interest requested by the plaintiff. Def.'s Opp'n to Pl.'s Mot. for Final J.

On May 6, 2002, the court entered final judgment for the plaintiff setting damages in the amount of $266,312.75 as prayed for in the complaint. Order dated May 6, 2002 at 1. The court declined to set damages at the $275,673.63 figure requested by the plaintiff, noting that there was no indication of how the plaintiff arrived at the higher damages amount and thus finding that it had not sufficiently been proven. *Id.* The final-judgment order also imposed pre-judgment interest at the six-percent rate requested by the plaintiff. *Id.* at 2.

On May 20, 2002, the plaintiff filed the instant Rule 59(e) motion, seeking the $275,673.63 figure listed as the proper amount of damages in the plaintiff's proposed final-judgment order, and asserting that the court should set pre-judgment interest at the rate of nine percent rather than the six percent rate he originally requested. Pl.'s Mot. to Amend J. at 1.

## III. ANALYSIS

### A. Legal Standard for a Rule 59(e) Motion to Alter or Amend Judgment

■■■■ Federal Rule of Civil Procedure 59(e) provides that a motion to alter or amend a judgment must be filed within 10 days of the entry of the judgment at issue. FED. R. CIV. P. 59(e); *W.C. & A.N. Miller Cos. v. United States,* 173 F.R.D. 1, 3 (D.D.C.1997) (Sporkin, J.) (citing *Derrington–Bey v. District of Columbia Dept. of Corrections,* 39 F.3d 1224, 1226 (D.C.Cir. 1994)). While the court has considerable

discretion in ruling on a Rule 59(e) motion, the reconsideration and amendment of a previous order is an extraordinary measure. *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir.1996) *(per curiam )* (citations omitted). Rule 59(e) motions "need not be granted unless the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice.'" *Id.* Finally, "[a] Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States,* 880 F.Supp. 37, 38 (D.D.C. 1995) *(per curiam )*; nor is it a vehicle for presenting theories or arguments that could have been advanced earlier. *W.C. & A.N. Miller Cos.,* 173 F.R.D. at 3.

### B. The Court Grants in Part and Denies in Part the Plaintiff's Rule 59(e) Motion

Applying Rule 59(e) analysis, the court concludes that the correct pre-judgment interest is in fact nine percent and grants the plaintiff's motion to amend the final judgment to so reflect. The court determines, however, that the amount of damages awarded to the plaintiff in the final judgment order should remain in effect, and denies the plaintiff's motion to amend the final judgment with regard to the amount of damages.

■■■ At the outset, the court notes that given the plaintiff's failure to raise these challenges at the final judgment stage, the court is under no obligation to address the arguments the plaintiff presents in the instant motion and may in fact properly deny the motion. *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir.1998). The plaintiff had a duty to bring these issues to the court's attention at an earlier stage of the litigation, *Concordia,* 999 F.2d

at 330; *All West Pet Supply Co. v. Hill's Pet Prods. Div.*, 847 F.Supp. 858, 860 (D.Kan.1994), or to provide a plausible justification for waiting until after the court issued its final-judgment order. *Firestone*, 76 F.3d at 1208. Having forfeited that opportunity, the plaintiff now attempts through his instant motion to gain a "second bite at the apple." *Sequa*, 156 F.3d at 144; *All West Pet Supply*, 847 F.Supp. at 860 (stating that "[a] party's failure to present his strongest care in the first instance does not entitle him to a second chance in the form of a motion to alter or amend"). But this court's decisions are "not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 287 (N.D.Ill.1988); *New York v. United States*, 880 F.Supp. at 38. The plaintiff therefore would have no basis to complain if the court were to decide not to take a second look after its entry of final judgment. *Vasapolli v. Rostoff*, 39 F.3d 27, 36 (1st Cir.1994). Notwithstanding the fact that the court has the discretion to summarily reject the plaintiff's motion, the court chooses to address the plaintiff's arguments to ensure the integrity of the final judgment.

The plaintiff argues that the proper damages award should be $275,673.63, which is almost $10,000.00 more than the $266,312.75 requested in the complaint and awarded by the court's final-judgment order. Pl.'s Mot. to Amend J. at 1. In addition, even though the plaintiff did not raise choice-of-law issues previously concerning the pre-judgment interest rate, the plaintiff now contends that New York law should govern the applicable pre-judgment interest rate in this case, thereby increasing the interest rate from six percent to nine percent. *Id.* The defendant argues against the higher damages amount and asserts that the court should not impose the nine percent pre-judgment interest rate. Def.'s Opp'n at 1. The court addresses each argument in turn.

**1. The Court Denies the Plaintiff's Motion to Alter or Amend the Final Judgment with Respect to Damages**

■ The defendant contends that the court should not amend its final judgment to reflect the higher amount of damages because the plaintiff failed to meet his burden of proving the higher amount of damages during the summary judgment phase of litigation and therefore is precluded from doing so now. Def.'s Opp'n at 1. In contrast, the plaintiff asserts that the court should amend the final judgment by imposing the higher amount of damages because the plaintiff proffered undisputed evidence in support of the higher damages amount in his motion for summary judgment. Pl.'s Mot. to Amend J. at 1. Specifically, the plaintiff contends that during discovery he timely amended his response to the defendant's first set of interrogatories to reflect the higher amount of damages. *Id.* at 3. The plaintiff further notes that he and the defendant both recited the same facts justifying the higher damages amount in their respective statements of undisputed material facts in support of summary judgment. *Id.* In sum, both sides agree on the facts regarding the bond transactions and the dollar amounts transacted, yet both sides disagree on the plaintiff's aggregate amount of damages flowing from these transactions. Pl.'s Statement of Undisputed Facts at 8–13; Def.'s Statement of Undisputed Facts at 5–7.

As observed earlier, a Rule 59(e) motion is discretionary and "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone*, 76 F.3d at 1208. In the instant case, the plaintiff

does not rely on an intervening change of law or the availability of new evidence to support his claim for the higher damages amount. Pl.'s Mot. to Amend J. at 6. Thus, the court's analysis is confined to the question of whether it needs to "correct a clear error or prevent manifest injustice." *Firestone*, 76 F.3d at 1208.

The plaintiff's motion for summary judgment requested damages in the amount of $275,673.63. Pl.'s Statement of Undisputed Facts at 13. In contrast, the defendant's motion for summary judgment restated that the plaintiff sought $266,312.75 in damages, never mentioning the $275,673.63 figure. Def.'s Statement of Undisputed Facts at 1; Def.'s Mot. for Summ. J. To resolve the discrepancy between these figures, the court looks to whether the plaintiff satisfied his burden of proving the higher damages amount in his summary judgment motion. Although the plaintiff lists the bond transactions comprising his damages calculation, the plaintiff neglects to justify how he reached his proffered aggregate damages amount. Pl.'s Statement of Undisputed Facts at 13. To wit, adding together the sums involved in the relevant bond transactions reveals a discrepancy in the plaintiff's damages calculation. *Infra* at II.n.3. Because the plaintiff does not explain this discrepancy, the court cannot rely on it. Therefore, the court reaffirms that the plaintiff has failed to satisfy his burden of proving damages beyond the amount prayed for in his complaint. Order dated May 6, 2002; *Turkmani*, 193 F.Supp.2d at 169 (citing to FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995)). Hence, no clear error exists in or manifest injustice is created by the court's $266,312.75 final judgment damages award. *Firestone*, 76 F.3d at 1208. The court accordingly denies the plaintiff's mo-

tion to alter or amend the final judgment with respect to the damages amount.

### 2. The Court Grants the Plaintiff's Motion to Alter or Amend the Final Judgment with Respect to Pre-judgment Interest

 The court now turns to the remaining issue of pre-judgment interest. A federal court must apply the choice-of-law rules of the jurisdiction in which it sits to determine the body of law that should govern substantive matters. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Substantive matters include both damages and pre-judgment interest, which is considered an aspect of damages. *Harris v. Mickel*, 15 F.3d 428, 429–30 (5th Cir.1994); *see also Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1416 (4th Cir.1992); 6 MOORE'S FEDERAL PRACTICE ¶ 124.07 (3d ed.2002). In determining the applicable state law governing a particular substantive matter, the court applies the law of the jurisdiction with the "more substantial interest in the resolution of the case." *Koro Co. v. Bristol–Myers Co.*, 568 F.Supp. 280, 286 (D.D.C.1983) (Richey, J.).

 The District of Columbia choice-of-law rules comprise a balancing test that weighs the competing interests of the subject jurisdictions to determine which jurisdiction should govern a particular substantive matter. *Jacobsen v. Oliver*, 201 F.Supp.2d 93, 99 (D.D.C.2002) (Huvelle, J.). In applying this balancing test, the court considers various factors such as the place of contracting, the place of contract negotiation, the place and performance of the contract, the location of the subject matter of the contract, the place of incorporation and the parties' place of business. *Koro Co.*, 568 F.Supp. at 286; *Turkmani*, 193 F.Supp.2d at 177 (citations omitted).

The plaintiff asks the court to reconsider that portion of its final-judgment order

setting pre-judgment interest at the rate of six percent. Pl.'s Mot. to Amend J. at 1. Ignoring the fact that the plaintiff himself initially requested the six percent pre-judgment interest rate, the plaintiff now argues that the New York pre-judgment interest rate of nine percent is warranted because New York bears the most significant relationship to the parties and their transactions. *Turkmani*, 193 F.Supp.2d at 177. Specifically, the plaintiff points to the fact that the bonds were issued in New York City and were to be presented to the Bank of New York located in New York City for payment from a sinking fund created and maintained in New York City. *Id.* In addition, he notes that the bonds were redeemable on publication of notice in New York City. *Id.*

The defendant responds by arguing that the District of Columbia bears the most significant relationship to the parties and the subject transactions for the specific issue of pre-judgment interest. Def.'s Opp'n at 1. To support its position, the defendant points to the fact that the plaintiff is a resident of the District of Columbia, Mega has its principal place of business in the District of Columbia, and that Mega's transfer of the bonds to the plaintiff occurred in the District of Columbia. *Turkmani*, 193 F.Supp.2d at 167.

The court notes, as it did earlier, that it would be justified in denying this aspect of the plaintiff's Rule 59(e) motion given that the plaintiff already had an opportunity to present this argument and Rule 59(e) motions are not "vehicles for presenting theories or arguments that could have been advanced earlier." *Id.; New York v. United States*, 880 F.Supp. at 38. Despite the line of authority supporting denial of the plaintiff's motion, the court recognizes the importance of revisiting this issue in order to correct a legal error. *Firestone*, 76 F.3d at 1208.

The court determines that the greater weight of the evidence favors the application of New York law to determine the pre-judgment interest rate. *Turkmani*, 193 F.Supp.2d at 177 (citations omitted); *Gold Medal Farms, Inc. v. Rutland County Co-operative Creamery, Inc.*, 9 A.D.2d 473, 478, 195 N.Y.S.2d 179 (N.Y.App.Div.1959). Supporting the application of New York law is the fact that the defendant issued the bonds in New York City and those bonds were to be presented to the Bank of New York for payment from a sinking fund created and maintained in New York City. *Turkmani*, 193 F.Supp.2d at 177; *Gold Medal Farms*, 9 A.D.2d at 478, 195 N.Y.S.2d 179 (finding that New York law should apply to determine the interest on damages flowing from a breach-of-contract claim when the claim arose in New York, New York health standards applied to the subject matter of the claim, New York orders fixed the contract price, and the contract did not indicate that the law of another jurisdiction should apply). In addition, the bonds were redeemable on publication of notice in New York City. *Id.* Furthermore, the Bank of New York was appointed as the fiscal agent for the payment of principal and interest on the bonds, as well as the sinking fund agent for the bonds. *Id.* Consistent with its summary judgment ruling, the court therefore grants the plaintiff's motion to alter or amend the final judgment with respect to pre-judgment interest, thereby imposing the New York interest rate of nine percent to replace the previously prescribed interest rate of six percent. N.Y. C.P.L.R. § 5001 (McKinney Supp.2001); N.Y. C.P.L.R. § 5004 (McKinney 1992); *Firestone*, 76 F.3d at 1208.

### 3. The Plaintiff's Failure to Address Key Issues

One final point merits attention. The plaintiff lacked the diligence to properly

present arguments supported by law on the matter of final judgment. Had the plaintiff advanced his argument in support of the New York pre-judgment interest rate in the first place, rather than requesting the six-percent rate and then asking for the nine-percent rate after the court ruled, the court would not have had to reconsider its final-judgment order. This court, like any court, relies on the adversarial system to bring to its attention relevant arguments and law to ensure just and fair results in the cases before it. Yet, counsel's failure to present relevant issues and key arguments left this court's prior decision partially open to scrutiny by no one other than the court itself. As one court has accurately remarked, the premise of an adversarial system is that courts do not sit as self-selected entities of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them. *Tom v. Heckler*, 779 F.2d 1250, 1259–60 (7th Cir.1985) (Posner, J., dissenting). Another court has similarly explained that "[u]nlike Emperor Nero, litigants cannot fiddle as Rome burns. A party who sits in silence ... acquiesces at his [own] peril." *Vasapolli*, 39 F.3d at 36. It is indeed a rarity for a court to revisit a final judgment. *Firestone*, 76 F.3d at 1208. Nevertheless, the court may exercise its discretion to correct a clear error of law as it has now done in this matter. *Id.*

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the plaintiff's motion to alter or amend the final judgment. Toward that end, the court's final-judgment order dated April 23, 2002, is hereby amended to reflect a nine percent pre-judgment interest rate. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of October 2002.

*ORDER*

**GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION TO ALTER OR AMEND THE FINAL JUDGMENT**

For the reasons stated in the court's Memorandum Opinion separately and contemporaneously issued,

it is this _____ day of October 2002,

**ORDERED** that the plaintiff's motion to alter or amend the final judgment is **GRANTED** in part and **DENIED** in part.

**SO ORDERED.**