MUFG Union Bank, N.A. v Axos Bank (2024 NY Slip Op 01678)

MUFG Union Bank, N.A. v Axos Bank

2024 NY Slip Op 01678

Decided on March 26, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 26, 2024

Before: Webber, J.P., Kern, Kennedy, Higgitt, Michael, JJ. 

Index No. 652474/19 Appeal No. 1914 Case No. 2023-04440 

[*1]MUFG Union Bank, N.A. (Formerly Known as Union Bank, N.A.), Respondent-Appellant,
v
Axos Bank (Formerly Known as Bank of Internet USA) et al., Appellants-Respondents.

Cozen O'Connor, New York (Jeremy E. Deutsch of counsel), for appellants-respondents.
Pillsbury Winthrop Shaw Pittman LLP, New York (David G. Keyko of counsel), for respondent-appellant.

Judgment, Supreme Court, New York County (Barry R. Ostrager, J.), dated June 5, 2023, as amended June 20, 2023, insofar as appealed from as limited by the briefs, granting judgment in plaintiff's favor on its tortious interference with contract claim, awarding plaintiff $15.8 million in damages on that claim, awarding plaintiff $2.5 million in damages on its breach of contract claim, applying a settlement offset before calculating prejudgment interest, and calculating prejudgment interest on the tortious interference claim from the midpoint between the date of the induced breach (April 3, 2018) and the date of entry of judgment, unanimously modified, on the law, the award of breach of contract damages vacated, and the award of prejudgment interest on the tortious interference damages vacated and remanded for recalculation in accordance with this order, and otherwise affirmed, without costs.
While in its final charge to the jury, the trial court omitted the "but for" language from Pattern Jury Instruction 3:56, the court still accurately conveyed the substance of the but-for causation rule to the jury, both in its initial charge and in response to the jury's request for clarification.
The jury could reasonably have found that defendants' conduct was a but-for cause of former defendant Epiq Systems, Inc.'s (Epiq's) breach of §§ 6.K and 23 of the subject Joint Services Agreement (JSA). It does not matter that Epiq independently decided to sell the Chapter 7 software business because the sale/attempted sale of the business was not, in and of itself, a breach of the JSA; only the failure to obtain plaintiff's consent in connection therewith. Although Epiq was also the party that pushed for the offending sale terms, evidence was presented that defendants also had a strong interest in terminating the relationship with plaintiff and that they facilitated the breach by suggesting a new deal structure in an attempt to take advantage of a perceived contractual loophole (cf. Gold Medal Farms, Inc. v Rutland County Co-Operative Creamery, Inc., 9 AD2d 473, 479 [3d Dept 1959]; Macy's Inc. v J.C. Penney Corp., Inc., 45 Misc 3d 274, 305-308 [Sup Ct, NY County 2014], mod on other grounds 127 AD3d 48, 55 [1st Dept 2015]). The fact that Epiq negotiated with other potential buyers before defendants is also not dispositive, as there could have been more than one breach.
The jury could reasonably have rejected testimony that plaintiff did not suffer any actual damages due to the loss of the joint client deposits and relied instead on plaintiff's expert's damages analysis. The jury could also have reasonably concluded that, but-for defendants' conduct, Epiq would have continued its relationship with plaintiff for longer than the 18-month contractual disengagement period, as assumed by defendants' expert, but less than forever, as assumed by plaintiff's expert.
There is no basis, however, for a separate award of breach of contract damages. Plaintiff did not establish [*2]any damages with respect to the alleged breaches of §§ 6.K, 7.C.4, or the server obligation. To the extent plaintiff relies on the loss of the joint client deposits, these damages are duplicative of (at least a portion of) the tortious interference damages. The damages for breach of the joint marketing obligation are the only ones Union separately quantified. We find, however, that there is no such enforceable obligation under § 1.A and D, on which plaintiff relies. The language of these provisions is precatory — describing the joint marketing relationship generally to be fleshed out in more detail in later provisions, such as § 6.A, on which plaintiff expressly does not rely (see Dragon Head LLC v Elkman, 118 AD3d 424, 425 [1st Dept 2014]; Wigand v Murphy, 263 AD2d 724, 726 [3d Dept 1999]).
The trial court properly applied the settlement offset before calculating prejudgment interest (see Lizden Indus., Inc. v Franco Belli Plumbing & Heating & Sons, Inc., 95 AD3d 738, 739 [1st Dept 2012]). It also properly calculated prejudgment interest on the tortious interference damages from a midpoint rather than the date of the induced breach because the damages, which essentially consisted of lost future profits, accrued over time (see CPLR 5001[b]; Langer v Miller, 305 AD2d 270, 271 [1st Dept 2003], lv denied 1 NY3d 503 [2003]). The endpoint should, however, have been
the date of the verdict, not the date of entry of judgment (compare CPLR 5001[c], with CPLR 5002).THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 26, 2024