**PATTON BOGGS, LLP, Plaintiff,**

v.

**CHEVRON CORPORATION, Defendant.**

**Civil Action No. 10–01975(HHK).**

United States District Court, District of Columbia.

April 19, 2011.

Opinion Denying Motion for Reconsideration July 8, 2011.

Charles Eric Talisman, Alexandra E. Chopin, Patton Boggs LLP, Washington, DC, for Plaintiff.

Thomas G. Hungar, John Franklin Bash, Gibson, Dunn & Crutcher, LLP, Washington, DC, Theodore J. Boutrous, Jr., Gibson, Dunn & Crutcher, L.L.P., Los Angeles, CA, for Defendant.

## MEMORANDUM OPINION

HENRY H. KENNEDY, JR., District Judge.

The law firm of Patton Boggs, LLP brings this action against Chevron Corporation, seeking a declaratory judgment that Patton Boggs's representation of parties adverse to Chevron in other courts does not violate standards of professional conduct such that it could be disqualified from participating in those cases. Patton Boggs also seeks leave to amend its complaint to add claims of tortious interfer-

ence and civil conspiracy against Chevron and Chevron's counsel, Gibson, Dunn & Crutcher, LLP.[1] Before the Court are: Patton Boggs's motion for leave to amend [# 19]; Chevron's motion to dismiss this action [# 5]; and Patton Boggs's cross-motion to strike Chevron's motion to dismiss [# 12]. Upon consideration of the motions, the oppositions thereto, and the record of this case, the Court concludes that Patton Boggs's motions must be denied and Chevron's motion to dismiss must be granted.

## I. BACKGROUND

This action constitutes the latest chapter in a sprawling dispute between Chevron and various parties in Ecuador regarding the operations of an oil consortium that allegedly caused extensive environmental damage in the Ecuadorian Amazon. Chevron inherited this dispute in 2001 via a merger with Texaco. Texaco was originally sued in the U.S. District Court for the Southern District of New York, but that action was dismissed, at the urging of both Texaco and the government of Ecuador, on forum non conveniens grounds. *See Aguinda v. Texaco, Inc.*, 303 F.3d 470 (2d Cir.2002). Subsequently, 48 Ecuadorian plaintiffs sued Chevron in Lago Agrio, Ecuador. On February 14, 2011, the Lago Agrio court issued a multi-billion dollar judgment against Chevron. *See Chevron Corp. v. Steven Donziger*, No. 11-0691, slip op. at 52–53, 2011 WL 979609 (S.D.N.Y. March 7, 2011). Chevron asserts that the proceedings in Ecuador were tainted by misconduct and lacked basic due process protections; whether that is true is beyond the scope of this action. What is of significance here is that, to aid in its defense of the Lago Agrio litigation, Chevron instituted proceedings in multiple federal courts

under 28 U.S.C. § 1782, which authorizes district courts to issue orders permitting discovery for use in foreign proceedings. *See* Compl. ¶¶ 2, 19.

Chevron also retained the Breaux Lott Leadership Group ("Breaux Lott Group"), a consulting and lobbying organization headed by former U.S. Senators John Breaux and Trent Lott, to assist with the Lago Agrio dispute. Compl. ¶ 25. The Breaux Lott Group represented Chevron from February 2008 to July 2010. In July 2010, Patton Boggs acquired the Breaux Lott Group. Compl. ¶ 30. It subsequently asked Chevron to waive a potential conflict of interest arising from Patton Boggs's representation of the government of Ecuador. Chevron refused and terminated its relationship with the Breaux Lott Group.

In November 2010, Patton Boggs entered an appearance on behalf of the Lago Agrio plaintiffs before the U.S. Court of Appeals for the Second Circuit. *See In re Chevron Corp.*, No. 10–4341 (2d Cir. Nov. 11, 2010) (notice of appearance). This prompted Chevron to write to Patton Boggs via its counsel, expressing "grave concerns that [Patton Boggs's] appearance in this matter constitutes a conflict of interest that could result in disqualification," reserving "the right to take any action we deem appropriate," and requesting a response by November 16, 2010. Def.'s Mot. to Dismiss Ex. A (letter from Randy M. Mastro to James E. Tyrrell, Jr. (Nov. 13, 2010)) at 1–2. Patton Boggs replied that it had reviewed the situation and concluded that its withdrawal was not required. *See* Def.'s Mot. to Dismiss Ex. C (letter from James E. Tyrrell, Jr. to Randy M. Mastro (Nov. 17, 2010)). Patton Boggs subsequently entered appearances on behalf of

---

**1.** All of the claims in Patton Boggs's original and proposed amended complaints are predicated on this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

the Lago Agrio plaintiffs in several more of Chevron's § 1782 actions.

Patton Boggs filed this action on November 17, 2010, seeking a declaratory judgment that "the Breaux Lott Leadership Group's prior non-legal work for Chevron does not provide a basis for disqualifying Patton Boggs from representing the Ecuadorian Plaintiffs." Compl. at 10 (prayer for relief). Chevron then moved to dismiss this case on multiple grounds. Patton Boggs responded by moving to strike Chevron's motion to dismiss and requesting leave to amend its complaint to include claims of tortious interference and civil conspiracy against both Chevron and Gibson Dunn.

## II. ANALYSIS

### A. Patton Boggs's Motion for Leave to Amend the Complaint

The Court first addresses Patton Boggs's motion for leave to amend its complaint. Patton Boggs seeks to add three new claims, all of which would apply to both Chevron and Gibson Dunn: (1) tortious interference with a contract; (2) tortious interference with an attorney-client relationship; and (3) civil conspiracy. These claims are based on what Patton Boggs terms a "smear campaign designed to hamper Patton Boggs' ability to represent its clients in accordance with Patton Boggs' contractual and ethical duties." Pl.'s Mot. for Leave to Amend at 3.

 A party seeking to amend its complaint more than once or after a certain period of time may do so only by written consent of the adverse party or by leave of the court. FED.R.CIV.P. 15(a). Because leave is to be freely given when justice so requires, see id., a refusal to allow amendment must be justified by a sufficiently compelling reason, such as undue delay, prejudice to the non-moving party, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, or futility of amendment. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C.Cir. 1996). The party opposing amendment has the burden of establishing that it would be improper. Nwachukwu v. Karl, 222 F.R.D. 208, 211 (D.D.C.2004).

Here, Chevron opposes Patton Boggs's request on the ground that amendment would be futile because Patton Boggs's new claims would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 215 (D.C.Cir.2010). Accordingly, the Court will address each count in the amended complaint to determine whether it would survive a Rule 12(b)(6) motion to dismiss, i.e., whether it states a claim upon which relief may be granted. See id. at 215–16.[2] Because both parties assume that District of Columbia law would govern Patton

---

**2.** To survive a motion to dismiss under Rule 12(b)(6), a complaint does not need detailed factual allegations. It must, however, recite facts sufficient to at least "raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). At bottom, a complaint must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Boggs's new claims, the Court will do likewise. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C.Cir.1991) ("[C]ourts need not address choice of law questions *sua sponte.*"); *Davis v. Grant Park Nursing Home LP*, 639 F.Supp.2d 60, 65 (D.D.C.2009) (where all parties assume that D.C. law applies, "[t]he Court need not and does not question the parties' assumptions on that point"); *accord Carranza v. Fraas*, 2011 WL 380164, at *7 n. 5 (D.D.C. Feb. 7, 2011).

### 1. Tortious Interference with Contract

Patton Boggs's first new claim asserts that Chevron and Gibson Dunn have tortiously interfered with a contract—namely, the contract between Patton Boggs and the Ecuadorian plaintiffs in the Lago Agrio litigation. *See* Am. Compl. ¶¶ 68–79. Patton Boggs alleges that Chevron and Gibson Dunn have done so by "engag[ing] in improper offensive tactics aimed at forcing Patton Boggs to breach its contact with the Ecuadorian Plaintiffs with the ultimate aim to deprive the Ecuadorian Plaintiffs of counsel." Am. Compl. ¶ 75. The tactics in question allegedly include intimidating witnesses, Am. Compl. ¶ 24, "burying" the Lago Agrio plaintiffs' counsel "beneath a mountain of discovery requests," Am. Compl. ¶ 26, publicly asserting that the Lago Agrio litigation is fraudulent, Am. Compl. ¶¶ 27, 36, and threatening to seek Patton Boggs's disqualification from Chevron's various § 1782 actions. Am. Compl. ¶ 33. Chev-

ron argues that the amended complaint fails to allege facts establishing a plausible claim to relief for tortious interference. Chevron is correct.

■ Under D.C. law, a successful tortious interference claim requires: the existence of a contract; knowledge of the contract by the defendant; the defendant's intentional procurement of the contract's breach; and damages resulting from that breach. *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 325 (D.C.2008).[3] Chevron points out that Patton Boggs' proposed complaint alleges not that such a breach has actually occurred (or that damages resulted), but rather that Chevron and Gibson Dunn's conduct is "*aimed at* forcing Patton Boggs to breach its contract." Am. Compl. ¶ 75 (emphasis added). Chevron thus argues that Patton Boggs has not stated a claim for tortious interference.

■ Patton Boggs responds that it has alleged that Chevron and Gibson Dunn "have *as their goal* the 'intentional procurement' of the breach of" Patton Boggs's contract with the Lago Agrio plaintiffs, which, Patton Boggs avers, is sufficient to state a claim of tortious interference. Pl.'s Reply to Def.'s Opp'n to Mot. for Leave to Amend [# 23] at 12 (emphasis added). But Patton Boggs misunderstands the law. "Unlike in some jurisdictions, courts in the District of Columbia have held that a breach of contract is an essential element of" a tortious interference claim. *Murray*, 953 A.2d at 326 (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,

---

**3.** Patton Boggs points out that some federal decisions have characterized the third element as "intentional interference without justification." *See, e.g., Jones v. Meridian Towers Apartments, Inc.*, 816 F.Supp. 762, 769 (D.D.C.1993). That formulation, however, appears to impose a lower bar than do more recent decisions by the District's own highest

court. *See Murray*, 953 A.2d at 325. Accordingly, this Court will not employ it. *See Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co.*, 944 F.2d 940, 944 (D.C.Cir.1991) (federal courts sitting in diversity must determine how the highest court of the state would decide the question before them).

48 F.3d 1260, 1266 (D.C.Cir.1995)) (internal quotation marks omitted). Because Patton Boggs does not allege any facts suggesting that such a breach has occurred, the Court cannot "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. Accordingly, Patton Boggs has failed to state a tortious interference claim, and amendment to add this claim would be futile. *See Murray,* 953 A.2d at 325–26 (affirming the dismissal of a tortious interference claim for failure to state a claim where there was no breach of the contract at issue); *see also Taylor v. FDIC,* 132 F.3d 753, 761 (D.C.Cir.1997) ("Dismissal under Rule 12(b)(6) is proper when, taking the material allegations of the complaint as admitted, and construing them in plaintiffs' favor, the court finds that the plaintiffs have failed to allege all the material elements of their cause of action." (internal citations omitted)).

## 2. Tortious Interference with Attorney–Client Relationship

Patton Boggs's second new claim similarly asserts that Chevron and Gibson Dunn have tortiously interfered with Patton Boggs's attorney-client relationship with the Lago Agrio plaintiffs. *See* Am. Compl. ¶¶ 80–89. It is not clear, however, that "tortious interference with an attorney-client relationship" exists as a discrete tort in the District of Columbia. The only case of which the Court is aware that addresses such a claim is *Barnes v. Quigley,* 49 A.2d 467 (D.C.1946), in which the Municipal Court of Appeals (the predecessor to the current D.C. Court of Appeals) appeared to analyze a claim of "unlawful interference into the relationship between attorney and client," *id.* at 467, as one of

interference with a contract or business relationship. *See id.* at 468. Further, Patton Boggs neither identifies any case that establishes such a claim as distinct from a normal tortious interference claim nor responds to Chevron's argument that no such cause of action exists. Accordingly, the Court concludes that such a claim is simply a type of claim for interference with a contractual or business relationship. *See* 90 A.L.R.4th 621, § II (1991) ("Courts in many jurisdictions have [applied] to the attorney-client relationship the general rule that wrongful interference by a third person with a contractual or business relationship of another gives rise to liability in tort."). As such, it fails for the same reasons that the claim above fails.

## 3. Civil Conspiracy

■ Patton Boggs's final new claim is one of civil conspiracy, based on the same allegations that underpin the two tortious interference claims. This claim too must fail. In the District of Columbia, civil conspiracy is not an independent tort; thus, a claim for civil conspiracy will not lie in the absence of an underlying tortious act. *Nader v. Democratic Nat'l Comm.,* 567 F.3d 692, 697 (D.C.Cir.2009) (citing *Hill v. Medlantic Health Care Grp.,* 933 A.2d 314, 334 (D.C.2007); *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.,* 749 A.2d 724, 738 (D.C.2000)). Because Patton Boggs's underlying claims of tortious interference fail to state plausible claims for relief, its conspiracy claim likewise falls short. Thus, none of Patton Boggs's new claims would survive a motion to dismiss under Rule 12(b)(6), and amendment of the complaint to include them would be futile. Accordingly, Patton Boggs's motion for leave to amend will be denied.[4]

---

4. Because the Court concludes that amendment would be futile, it does not reach Chevron's additional argument that it should deny

Patton Boggs's motion for leave to amend because Patton Boggs seeks to add these new claims in bad faith.

### B. The Court Declines to Strike Chevron's Motion

■ Patton Boggs next moves to strike Chevron's motion to dismiss for including factual assertions that are irrelevant or beyond the scope of the material that the Court can consider at this stage. Patton Boggs acknowledges that, on a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(3), the Court can consider facts beyond those alleged in the complaint, but asserts that Chevron's motion contains numerous factual assertions that "go well beyond the confines of the complaint and have nothing to do with the Court's subject matter jurisdiction or venue." Pl.'s Opp'n to Def.'s Mot. to Dismiss at 9. Chevron responds that Patton Boggs's request is without legal support and further that it is permissible and commonplace for a motion to provide basic background facts. The Court concludes that the motion to strike should be denied.[5]

First, as Chevron observes, it is routine for parties to provide the Court with a certain amount of background information that is not directly relevant to the merits of the claim or motion at issue. This practice ensures that the Court understands the context in which the dispute arose. *See, e.g., Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir.2000) (reversing a grant of a motion to strike because the allegations at issue "provide[d] important context and background to [the] suit"). Second, to the extent that the boundaries of this practice have been tested or exceeded here, both parties are guilty. Most of the filings in this action contain prodigious amounts of "background" information related to the Lago Agrio litigation that is largely irrelevant to either the merits of this action or the Court's jurisdiction and appears intended primarily to cast the other party in a negative light. Finally, none of the allegedly extraneous allegations in Chevron's motion to dismiss are potentially prejudicial to Patton Boggs; rather, they deal with matters that the Court simply need not consider in resolving the motion. *See Nwachuk-wu v. Karl*, 216 F.R.D. 176, 178 (2003) ("[M]any courts will grant ... motions [to strike] only if the portions sought to be stricken are prejudicial or scandalous."). For that reason, and because "[c]ourts disfavor motions to strike," *id.*, the Court will not strike the motion to dismiss. Accordingly, the Court will now turn to the merits of that motion.

### C. Chevron's Motion to Dismiss

Chevron seeks the dismissal of Patton Boggs's declaratory judgment claim on several grounds. It asserts that this dispute is not yet ripe; that this Court should use its discretion under the Declaratory Judgment Act to decline to adjudicate the propriety of Patton Boggs's participation in matters in other districts; and, similarly, that the District of Columbia is the wrong venue for the resolution of this action. Chevron's arguments are persuasive.

---

5. The Court assumes for the purposes of this discussion that: (1) Patton Boggs's motion to strike is made under Rule 12(f), which allows the Court to "strike from a pleading any redundant, immaterial, impertinent, or scandalous matter," FED.R.CIV.P. 12(f); (2) Patton Boggs seeks to strike Chevron's motion because the factual assertions therein are "immaterial" or "impertinent"; and (3) Rule 12(f) applies to motions, which are technically not "pleadings." *See* Fed.R.Civ.P. 12(b); BLACK'S LAW DICTIONARY (9th ed.2009) (defining "pleading" as "[a] formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses. In federal civil procedure, the main pleadings are the plaintiff's complaint and the defendant's answer.").

### 1. Ripeness [6]

 The ripeness doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), and is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). The doctrine thus has two components: a constitutional bar to suits where there is no "present injury," *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C.Cir.1999), and a prudential inquiry, which turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding resolution. *Abbott Labs.*, 387 U.S. at 149, 87 S.Ct. 1507.

Here, Chevron asserts that Patton Boggs's complaint fails on both counts: Chevron argues that Patton Boggs has not identified a sufficiently concrete and specific injury, and that prudential considerations dictate dismissal. Patton Boggs responds that Chevron's November 2010 letter reserving "the right to take any action [it] deems appropriate" constituted a concrete and immediate threat to seek Patton Boggs's disqualification, and that resolution of its obligations in one forum is preferable to duplicative and piecemeal litigation. Patton Boggs's response is unavailing.

Whether Chevron's letter to Patton Boggs constitutes a credible threat of litigation sufficient to satisfy the constitutional injury requirement is a close question. *See Fed. Exp. Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 963–65 (D.C.Cir.1995) (holding that, in the context of labor negotiations, a statement that a party would "take all appropriate action" could not be viewed as "a direct threat to file a lawsuit in the immediate future," but noting that "a different situation might be presented" if the statement had been made in "a communication from one legal counsel to another"). Even if the letter is sufficient to satisfy the constitutional injury requirement, however, the letter does not support the relief that Patton Boggs requests here.

 Patton Boggs seeks a declaratory judgment that "the Breaux Lott Leadership Group's prior non-legal work for Chevron does not provide a basis for disqualifying Patton Boggs from representing the Ecuadorian Plaintiffs." Compl. at 10 (prayer for relief). Despite this declaration's apparent lack of geographical limitation, Patton Boggs avers that the Court would need to apply only one body of law: "it is likely that District of Columbia rules will apply because the conduct purportedly giving rise to the conflict—[the Breaux Lott Group's] performance of lobbying

---

**6.** Chevron's ripeness argument seeks the dismissal of this action under Federal Rule of Civil Procedure 12(b)(1), which authorizes a defendant to move to dismiss a complaint, or any portion thereof, for lack of subject-matter jurisdiction. Fed.R.Civ.P. 12(b)(1); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction.... It is to be presumed that a cause lies outside this limited jurisdic-

tion...."). In response to such a motion, the plaintiff bears the burden of establishing federal jurisdiction. *See Shuler v. United States*, 531 F.3d 930, 932 (D.C.Cir.2008). If the plaintiff is unable to do so, the Court must dismiss the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citing *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)).

work for Chevron—did not occur before a tribunal" and took place in the District. Pl.'s Opp'n at 13 n. 1. This, however, is incorrect.[7]

Under the ABA's Model Rules of Professional Conduct—and thus, in a significant number of jurisdictions—the rules that govern "conduct in connection with a matter pending before a tribunal" are "the rules of the jurisdiction in which the tribunal sits." MODEL RULES OF PROF'L CONDUCT R. 8.5(b)(1); *accord* D.C. RULES OF PROF'L CONDUCT R. 8.5(b)(1); MD. LAWYER'S RULES OF PROF'L CONDUCT R. 8.5(b)(1); N.Y. RULES OF PROF'L CONDUCT R. 8.5(b)(1); PA. RULES OF PROF'L CONDUCT R. 8.5(b)(1). Thus, the propriety of Patton Boggs's participation in Chevron's various § 1782 proceedings—which is unquestionably "conduct in connection with" those proceedings—is governed by the respective rules of the jurisdictions where those cases are pending. *See Southwire Co. v. Ramallo Bros. Printing, Inc.,* 2009 WL 4937726, at *15 (D.P.R. Dec. 15, 2009). Consequently, in order to determine whether "the Breaux Lott Leadership Group's prior non-legal work for Chevron ... provide[s] a basis for disqualifying Patton Boggs from representing the Ecuadorian Plaintiffs," the Court would need to decipher and apply the law of *every* jurisdiction where Chevron *might* seek Patton Boggs's disqualification—potentially every single state.

This fact is fatal to Patton Boggs's argument that its suit is ripe. Even if Chevron's November 2010 letter constituted a credible threat of litigation for constitutional ripeness purposes, that letter could only have created a justiciable controversy *as to those actions that are currently pending*—it cannot be understood as a clear and immediate threat to seek Patton Boggs's disqualification from actions that do not yet exist. *See Laird v. Tatum,* 408 U.S. 1, 15, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972) (ripeness requires an "actual present or immediately threatened injury"); *cf. Lujan v. Nat'l Wildlife Fed.,* 497 U.S. 871, 891–94, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (explaining that administrative disputes are ripe for judicial intervention "only when, *and to the extent that,* a specific 'final agency action' has an actual or immediately threatened effect" (emphasis added)). Thus, as to each jurisdiction where Patton Boggs does not currently represent the Lago Agrio plaintiffs in litigation against Chevron, Patton Boggs is essentially asking for an advisory opinion regarding its ethical obligations under that jurisdiction's law—a remedy that is beyond this Court's power to provide. *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (explaining that the federal judicial power does not extend to "advising what the law would be upon a hypothetical state of facts").[8] Consequently, Patton Boggs's declaratory judgment claim is, at best,

---

7. The Court also notes that whether it was the Breaux Lott Group's lobbying—as opposed to Patton Boggs's subsequent appearances in litigation against Chevron—that "purportedly [gave] rise to the conflict" is a largely semantic question. In fact, it would probably be most precise to say that it was the combination of the two actions that caused the putative conflict. Regardless, the location of the lobbying activity is irrelevant to the question of which rules govern disqualifications from pending actions.

8. Prudential ripeness concerns do not favor Patton Boggs either; given that Patton Boggs is effectively asking the Court to conduct a fifty-state survey of its ethical obligations *vis a vis* the Lago Agrio litigation, it cannot be said that "the scope of the controversy has ... manageable proportions." *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (quoting *Lujan,* 497 U.S. at 891, 110 S.Ct. 3177) (internal quotation marks omitted).

only ripe as to those jurisdictions where it is involved in one of Chevron's § 1782 actions.

### 2. Abstention under the Declaratory Judgment Act

██ Even if some portion of Patton Boggs's suit is ripe, the Court nevertheless exercises its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, to abstain from hearing this case. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). This discretion is most often exercised when the dispute in question would be "better settled" by a court before which parallel proceedings are pending. *Cincinnati Indem. Co. v. A & K Const. Co.*, 542 F.3d 623, 625 (8th Cir.2008) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)); *see Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir.2010) ("[T]he classic example of when abstention is proper occurs where . . . solely declaratory relief is sought and parallel state proceedings are ongoing."); *Crown Cork & Seal Co., Inc. v. United Steelworkers*, 2004 WL 117923, at *3 (W.D.Pa. June 9, 2004) (stating that these abstention principles are "equally applicable" where the parallel case is pending in another federal court).

██ Here, the question of whether Patton Boggs might be subject to disqualification from any of Chevron's § 1782 proceedings would be "better settled" by the courts presiding over those cases. The necessary parties (*i.e.*, Patton Boggs and Chevron) are involved in those actions, and the presiding courts are perfectly capable of resolving Patton Boggs's ethical dilemma. *See Brillhart*, 316 U.S. at 495, 62 S.Ct. 1173 (abstention analysis includes "whether the claims of all parties in interest can satisfactorily be adjudicated in [the parallel] proceeding"). Indeed, as Chevron points out, whether an attorney is competent to appear in a particular proceeding is properly a question for the presiding court to resolve. *See Dyntel Corp. v. Ebner*, 120 F.3d 488, 491 (4th Cir.1997); *cf. Airgas, Inc. v. Cravath, Swaine & Moore LLP*, 2010 WL 624955, at *4 (E.D.Pa. Feb. 22, 2010) ("To create an alternate forum for the subsidiary issue of considering the disqualification of [a law firm] would be tantamount to the proverbial tail wagging the dog."). This is doubly true when answering that question would require an application of the presiding court's own ethical rules, with which it will undoubtedly be more familiar. *See Bishop v. Wood*, 426 U.S. 341, 345–46, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (noting the expertise of district court judges in the law of the jurisdictions where they sit). For this Court to inform all other federal courts that Patton Boggs is qualified to represent the Lago Agrio plaintiffs before those courts would be incredibly intrusive. In fact, Patton Boggs has not identified a single case in which a court has granted relief of the type it seeks here. Accordingly, to the extent that Patton Boggs's suit is in fact ripe, the Court exercises its judgment under the Declaratory Judgment Act to dismiss the case.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Patton Boggs's motion to strike [# 12] and motion for leave to amend [# 19] must be denied and Chevron's motion to dismiss [# 5] must be granted. An appropriate order accompanies this memorandum opinion.

## MEMORANDUM OPINION AND ORDER

On April 19, 2011, the Court dismissed this action, ruling that issuing a declaratory judgment regarding plaintiff Patton Boggs, LLP's ethical obligations in various other federal proceedings would be improper, and that Patton Boggs could not amend its complaint to add tort claims against defendant Chevron and its counsel, Gibson, Dunn & Crutcher, LLP. *See Patton Boggs, LLP v. Chevron Corp.*, 791 F.Supp.2d 13 (D.D.C.2011). Before the Court is Patton Boggs's motion for reconsideration [# 37], which argues that the Court erred in several respects and asks the Court to reinstate this action and allow Patton Boggs to amend its complaint to add new tort claims. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion must be denied.

## I. BACKGROUND

In the interests of brevity, the Court will not retread all of the events that gave rise to this action, which are summarized in the Court's prior opinion and elsewhere. *See Patton Boggs*, 791 F.Supp.2d at 17–20; *Chevron Corp. v. Donziger*, 768 F.Supp.2d 581, 597–626 (S.D.N.Y.2011) (chronicling the underlying environmental dispute and litigation). In brief, Patton Boggs represents numerous parties in Ecuador ("the Lago Agrio plaintiffs") who are engaged in litigation with Chevron, both in Ecuador and in the United States. Patton Boggs owns the Breaux Lott Leadership Group, a lobbying organization that previously worked for Chevron on related issues. Patton Boggs filed this action in November 2010, seeking a declaratory judgment that its ownership of the Breaux Lott Group did not create a conflict of interest that would prevent it from representing parties adverse to Chevron. Chevron moved to dismiss Patton Boggs's claims on multiple grounds. Patton Boggs responded by moving to strike Chevron's motion to dismiss and seeking leave to amend its complaint to add claims of tortious interference against Chevron and Gibson Dunn.

On April 19, 2011, the Court issued a memorandum opinion and a judgment dismissing the case in its entirety. The Court first denied Patton Boggs's motion for leave to amend its complaint, explaining that because Patton Boggs did not allege any facts suggesting that Chevron and Gibson Dunn's conduct had caused an actual breach of Patton Boggs's contract with the Ecuadorian plaintiffs, it had failed to state a claim of tortious interference under District of Columbia law. *See Patton Boggs*, 791 F.Supp.2d at 19–22. The Court assumed that District law applied because both parties did so, and "courts need not address choice of law questions *sua sponte.*" *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C.Cir.1991).[1]

The Court then granted Chevron's motion to dismiss Patton Boggs's declaratory judgment claim.[2] The Court concluded that Patton Boggs's requested remedy—a declaratory judgment that "the Breaux Lott Leadership Group's prior non-legal

---

1. The Court also rejected a claim for tortious interference with an attorney-client relationship (finding no indication that such a cause of action exists under District law) and a civil conspiracy claim (which cannot lie absent a viable underlying tort claim). *See Patton Boggs*, 791 F.Supp.2d at 21–22.

2. The Court denied Patton Boggs's motion to strike Chevron's motion to dismiss because it found no material therein sufficiently prejudicial or scandalous to warrant striking the motion. *See Patton Boggs*, 791 F.Supp.2d at 21–23.

work for Chevron does not provide a basis for disqualifying Patton Boggs from representing the Ecuadorian Plaintiffs," Compl. at 10 (prayer for relief)—went well beyond any justiciable controversy created by Chevron's alleged threat to seek Patton Boggs's disqualification from the actions that Chevron had initiated under 28 U.S.C. § 1782 (which authorizes district courts to issue orders permitting discovery for use in foreign proceedings). *See Patton Boggs,* 791 F.Supp.2d at 22–25. Further, the Court concluded that, insofar as the action was ripe for adjudication, abstention under the Declaratory Judgment Act was appropriate, because the question of Patton Boggs's ability to appear in Chevron's various collateral proceedings was one better settled by the courts presiding over those cases. *See Patton Boggs,* 791 F.Supp.2d at 25. The Court noted that for it "to inform all other federal courts that Patton Boggs is qualified to represent the Lago Agrio plaintiffs before those courts would be incredibly intrusive." *Id.*

On April 27, 2011, Patton Boggs moved for reconsideration of the Court's decision to dismiss the case, and sought leave to amend its complaint to add new claims. Simultaneously, it filed a new action in this Court, apparently presenting claims identical to those that it seeks permission to reinstate or add here. *See Patton Boggs, LLP v. Chevron Corp.,* No. 11–0799 (D.D.C. filed Apr. 27, 2011).

## II. LEGAL STANDARD

▇▇▇ Patton Boggs suggests that the Court treat its motion for reconsideration as being made under Federal Rule of Civil Procedure 60(b), which allows the Court to "relieve a party ... from a final judgment, order, or proceeding" for certain reasons. Fed.R.Civ.P. 60(b). Patton Boggs acknowledges, however, that the

Court might conclude that Rule 59(e), which allows a party to file a motion "to alter or amend a judgment" within 28 days thereof, Fed.R.Civ.P. 59(e), supplies the appropriate standard. *See* Pl.'s Mem. in Supp. of Mot. for Recons. ("Pl.'s Mem.") at 1. Because Patton Boggs's motion for reconsideration "calls into question the correctness of [the Court's] judgment" and was filed within Rule 59(e)'s time limit, the Court construes it as being made pursuant to that provision. *See MLC Automotive, LLC v. Town of Southern Pines,* 532 F.3d 269, 277 (4th Cir.2008); *Johnson v. Penn Camera Exch.,* 583 F.Supp.2d 81, 84–85 (D.D.C.2008); *Turner v. Dep't of Interior,* 2007 WL 2982722, at *1 (D.D.C. Oct. 12, 2007) (citing *Derrington–Bey v. D.C. Dep't of Corr.,* 39 F.3d 1224, 1225–27 (D.C.Cir. 1994)). Thus, Patton Boggs's motion "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Anyanwutaku v. Moore,* 151 F.3d 1053, 1057 (D.C.Cir.1998) (quoting *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir.1996) (per curiam)) (internal quotation marks omitted). Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir.1996); *accord Carter v. Wash. Metro. Area Transit Auth.,* 503 F.3d 143, 145 n. 2 (D.C.Cir. 2007).

## III. ANALYSIS

### A. Abstention under the Declaratory Judgment Act

Patton Boggs first contends that the Court erred by declining to issue a declar-

atory judgment resolving its ethical obligations vis-à-vis Chevron and the Lago Agrio litigation. It argues that the Court appeared to overlook two salient facts: first, that any court deciding whether a conflict precludes Patton Boggs from appearing opposite Chevron would turn on a threshold question of District of Columbia law, which this Court is ideally suited to resolve; and second, that one of Chevron's § 1782 actions is proceeding in this district. These arguments are unpersuasive.

In granting Chevron's motion to dismiss, the Court explained that because the declaratory judgment sought by Patton Boggs—that it could represent the Lago Agrio plaintiffs—was without geographical or jurisdictional limitation, Patton Boggs was effectively asking the Court "to decipher and apply the law of *every* jurisdiction where Chevron *might* seek Patton Boggs's disqualification." *See Patton Boggs*, 791 F.Supp.2d at 24. In so concluding, the Court rejected Patton Boggs's argument that, because the Breaux Lott Group's lobbying for Chevron took place in the District, District law would govern any disqualification motion based on a putative conflict caused by that lobbying activity. *See id.*

■ Patton Boggs now contends that the Court erred by overlooking the "fact" that a court in another jurisdiction, before applying its own ethical rules, would have to determine whether the Breaux Lott Group's lobbying services for Chevron were legal in nature, a question that, Patton Boggs avers, is governed by District of Columbia law. *See* Pl.'s Mem. at 3. To begin with, this argument—like Patton Boggs's original contention that District law would govern any disqualification motion based on the Breaux Lott Group's lobbying—is wholly unsupported. Indeed, this assertion appears directly contrary to the Court's prior holding that "the propriety of Patton Boggs's participation in Chevron's various § 1782 proceedings ... is governed by the respective rules of the jurisdictions where those cases are pending." *Patton Boggs*, 791 F.Supp.2d at 24.[3] But more importantly, this proposition—even if true—is simply irrelevant to the Court's bottom-line determination that it would overreach by adjudicating the propriety of Patton Boggs's appearance before other courts. Even if District law would "inform the disqualification analysis" under other courts' rules of conduct, Pl.'s Mem. at 4, those courts remain better suited to undertake that analysis. *Patton Boggs*, 791 F.Supp.2d at 25.

■ The same is true of Patton Boggs's second point: that Judge Kollar-Kotelly of this district is currently presiding over one of Chevron's § 1782 actions, in which Patton Boggs has appeared as counsel. *See In re Application of Chevron Corp.*, Misc. No. 11–0030 (D.D.C. filed Jan. 21, 2011) (Kollar–Kotelly, J.). Judge Kollar–Kotelly, no less than a judge sitting in

---

3. For example, in New York, where Chevron filed one of its § 1782 proceedings, *see In re Chevron Corp.*, 709 F.Supp.2d 283 (S.D.N.Y. 2010), "a party seeking disqualification of its adversary's lawyer [on the basis of a prior-client conflict] must prove," inter alia, "the existence of a prior attorney-client relationship between the moving party and opposing counsel." *Tekni–Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 131, 651 N.Y.S.2d 954, 674 N.E.2d 663 (N.Y.1996). Patton Boggs offers no authority to support the dubious proposition that a New York federal court, applying New York's Rules of Professional Conduct, must answer *this* question under District law, but adjudicate the remaining two disqualification elements—that the matters involved in both representations are substantially related, and that the interests of the present client and former client are materially adverse, *id.*—under New York law.

another judicial district, is "perfectly capable of resolving Patton Boggs's ethical dilemma." *Patton Boggs*, 791 F.Supp.2d at 25. The fact that she sits in the same courthouse does not change the fact that "creat[ing] an alternate forum for the subsidiary issue of considering the disqualification of [a law firm] would be tantamount to the proverbial tail wagging the dog." *Id.* (quoting *Airgas, Inc. v. Cravath, Swaine & Moore LLP*, 2010 WL 624955, at *4 (E.D.Pa. Feb. 22, 2010)) (internal quotation marks omitted) (second alteration in original). Nor, of course, could the presence of *one* of Chevron's collateral actions in this district justify a ruling by this Court on Patton Boggs's ability to appear in *all* of them.[4] In short, Patton Boggs has failed to demonstrate that the Court's abstention under the Declaratory Judgement Act—which was, after all, discretionary, *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)—was improper.

## B. Denial of Leave to Add Claims of Tortious Interference and Civil Conspiracy

Patton Boggs next argues that the Court erred in denying Patton Boggs leave to amend its complaint to add claims of tortious interference and civil conspiracy against Chevron and Gibson Dunn. Patton Boggs asserts that, in holding that adding these claims would be futile because they could not survive a motion to dismiss for failure to state a claim, the Court may have applied the wrong jurisdiction's law, and definitely applied the wrong theory of tortious interference. The Court addresses each argument in turn.

### 1. Choice of Law

■ Patton Boggs's proposed amended complaint did not specify the body of law under which Patton Boggs sought to bring its tortious interference and civil conspiracy claims.[5] Chevron, in opposing the addition of Patton Boggs's tort claims, assumed that those claims would be governed by District of Columbia law. *See* Def.'s Opp'n to Pl.'s Mot. for Leave to Amend [# 22] at 20–21. In its reply brief, Patton Boggs did the same. *See* Pl.'s Reply in Supp. of Pl.'s Mot. for Leave to Amend [# 23] at 17–19. In light of both parties' unquestioning reliance on District law, the Court concluded that it need not raise the choice-of-law issue *sua sponte*, and analyzed Patton Boggs's tort claims under District law. *Patton Boggs*, 791 F.Supp.2d at 19–22.

■ Patton Boggs now suggests that, by "citing to law within the District of Columbia to counter Chevron's argu-

4. Patton Boggs suggests that the Court may have wrongly assumed that Patton Boggs has appeared in all of Chevron's § 1782 actions, rather than just six. Pl.'s Mem. at 4 n. 3. This distinction is irrelevant because Patton Boggs's requested declaratory judgment was not limited to those actions in which it had already appeared. Patton Boggs requested, without qualification, a declaration that "the Breaux Lott Leadership Group's prior non-legal work for Chevron does not provide a basis for disqualifying Patton Boggs *from representing the Ecuadorian Plaintiffs*." Compl. at 10 (prayer for relief) (emphasis added). As the Court has already explained, this request

*by its terms* reaches any and all litigation, in any forum, where Patton Boggs *might* appear on behalf of the Lago Agrio plaintiffs. *Patton Boggs*, 791 F.Supp.2d at 23–25. And, as the Court made clear, that fact also poses constitutional ripeness problems for Patton Boggs's requested relief, *see id.*, an issue that Patton Boggs's motion for reconsideration entirely fails to address.

5. Nor was it required to—"[c]omplaints 'need not plead law or match facts to every element of a legal theory.' ". *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C.Cir.2000) (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998)).

ments," it "did not intend to concede that District of Columbia law would apply." Pl.'s Mem. at 6. In fact, Patton Boggs now avers, New Jersey law "may well" govern, because New Jersey is where Patton Boggs performs the services with which Chevron and Gibson Dunn have allegedly interfered. But the time for this argument has passed. A motion for reconsideration "is not an appropriate forum for ... arguing matters that could have been heard during the pendency of the previous motion." *Carter*, 503 F.3d at 145 n. 2 (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir.1996)) (internal quotation marks omitted); *see also Kattan ex rel. Thomas v. District of Columbia*, 995 F.2d 274, 276 (D.C.Cir.1993) ("[A] losing party may not use a Rule 59 motion to raise new issues that could have been raised previously."). Patton Boggs had ample opportunity to argue that New Jersey law governed its tort claims; it did not. It may not do so now.[6]

### 2. The Applicable Theory of Tortious Interference

Patton Boggs next contends that, even under District of Columbia law, the Court erred by holding that Patton Boggs's tortious interference claim was deficient because it failed to allege an actual breach of Patton Boggs's contract with the Lago Agrio plaintiffs. Pl.'s Mem. at 5. Patton Boggs points out that the Court relied on a formulation of tortious interference that involves the defendant inducing a third party to breach a contract with the plaintiff. *See Patton Boggs*, 791 F.Supp.2d at 20–21 (citing *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 325–26 (D.C. 2008)). This formulation, employed by the District's courts, stems from § 766 of the Second Restatement of Torts. *See Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 290 (D.C. 1989) (citing RESTATEMENT (SECOND) OF TORTS § 766 (1979)). Patton Boggs, however, avers that its complaint states a claim for relief under a different formulation of tortious interference, as codified in § 766A of the Restatement:

> One who intentionally and improperly interferes with the performance of a contract ... between [the plaintiff] and a third person, by preventing the [plaintiff] from performing the contract *or causing his performance to be more expensive or burdensome,* is subject to liability to the [plaintiff] for the pecuniary loss resulting to him.

RESTATEMENT (SECOND) OF TORTS § 766A (emphasis added). Patton Boggs asserts that it has stated a claim for relief under *this* formulation of tortious interference, which does not require an actual breach of contract.[7] Patton Boggs is incorrect.

The first problem here is that Patton Boggs had ample opportunity to present this argument in support of its motion for leave to amend, and failed to do so. In fact, Patton Boggs's own reply brief laid out the precise formulation of tortious in-

---

6. *Turkmani v. Republic of Bolivia*, 273 F.Supp.2d 45 (D.D.C.2002), is not to the contrary. Although the *Turkmani* court exercised its discretion to address a choice-of-law issue raised first in a motion for reconsideration, it acknowledged that it "would be justified in denying" that portion of the motion because such motions are not vehicles for presenting theories or arguments that could have been advanced earlier. *Id.* at 52.

7. The Third Circuit recently explained the difference between the two causes of action as follows: "§ 766 allows a plaintiff to recover if a third party fails entirely to perform ..., while § 766A allows the plaintiff to recover if he himself was forced either to fail to perform under a contract or to perform under more expensive or burdensome circumstances...." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 834 (3d Cir.2011).

terference that it now argues the Court erred by employing. *See* Pl.'s Reply in Supp. of Mot. for Leave to Amend at 12 ("Under D.C. law, tortious interference with contract has four elements: '(1) existence of a contract, (2) knowledge of the contract, (3) *intentional procurement of its breach by the defendant,* and (4) damages resulting from the breach.'" (quoting *Sturdza v. United Arab Emirates,* 281 F.3d 1287, 1305 (D.C.Cir.2002)) (internal quotation marks omitted) (emphasis added)). Indeed, Patton Boggs's response to Chevron's argument that allegations of breach were required was not to assert the contrary, but rather to argue that it had alleged that Chevron and Gibson Dunn were attempting to cause a breach, which was sufficient. At no time did Patton Boggs mention the form of tortious interference contained in § 766A.

Second, it is not wholly clear that § 766A's cause of action is viable in the District. *DeKine v. District of Columbia,* 422 A.2d 981 (D.C.1980), the only case in which a D.C. court has even cited § 766A, did not, as Patton Boggs contends, "adopt" that provision. *See* Pl.'s Mem. at 6. The question before the *DeKine* court was when the plaintiffs' cause of action accrued for the purposes of a statute requiring notice to the District's Mayor of tort claims against the District within a certain time after the underlying injury. *See id.* at 983, 988. In resolving that question, the court stated broadly that damage is an essential element of tort claims "that fall under the general rubric of 'interference with contractual relations.'" *Id.* at 988 (quoting W. PROSSER, THE LAW OF TORTS §§ 129–130 (4th ed. 1971)). The *DeKine* court had no occasion to "adopt" the specific cause of action championed by Patton Boggs here.[8] And the only federal decision to apply § 766A under D.C. law involved a breach of contract; thus, it did not consider whether a plaintiff can sue a third party for impeding the plaintiff's performance where no breach has occurred. *See Park v. Hyatt Corp.,* 436 F.Supp.2d 60, 64–65 (D.D.C.2006).[9]

But the uncertain status of § 766A need not detain the Court here. Even if Patton Boggs's argument were not untimely, and even if the Court were to apply § 766A precisely as written, Patton Boggs's proposed amended complaint would *still* fail to state a claim for tortious interference. As noted above, damages are an essential element of any tortious interference claim. *DeKine,* 422 A.2d at 988. Section 766A itself states that it creates liability for "pecuniary loss." RESTATEMENT (SECOND) OF TORTS § 766A. But Patton Boggs's proposed amended complaint identified no such loss resulting from defendants' conduct. Patton Boggs alleged that Chevron and Gibson Dunn were "*seeking to* sully Patton Boggs' reputation," Am. Compl. ¶ 54 (emphasis added), but it did not allege that they had succeeded, let alone that "pecuniary loss" resulted.

---

8. In fact, the *DeKine* court did not even cite § 766A itself; it cited comment i thereto, which is simply a cross-reference to comments to § 766 that deal with damages and remedies. *See* RESTATEMENT (SECOND) OF TORTS § 766 cmts. t, u; *id.* § 766A cmt. i.

9. It is not a foregone conclusion that the District's courts would, if they recognized § 766A, allow suits where the plaintiff's performance had been made more burdensome or expensive, but where no breach had oc-

curred; they do not allow such claims in traditional, third-party tortious-interference cases, even though other jurisdictions do. *See Murray,* 953 A.2d at 326 ("Unlike in some jurisdictions, courts in the District of Columbia have held that 'a breach of contract is an essential element' of the tort [of tortious interference with a contract]." (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n,* 48 F.3d 1260, 1266 (D.C.Cir. 1995))).

Patton Boggs also alleged, in conclusory fashion, that it and its relationship with the Lago Agrio plaintiffs had suffered irreparable injury, Am. Compl. ¶¶ 78, 88, but did not explain how, or identify any resulting pecuniary harm. To state a cognizable claim for relief, a complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Even under § 766A, Patton Boggs's proposed amended complaint did not do so.

Simply put, Patton Boggs's argument is a day late and a dollar short. Patton Boggs failed to make this argument while its motion for leave to amend was pending; it now fails to provide adequate support for the contention that its preferred formulation of tortious interference is employed by the District's courts; and its proposed amended complaint fails to state a claim thereunder anyway. No "clear error or manifest injustice" occurred here. *Anyanwutaku*, 151 F.3d at 1057.

### C. Patton Boggs's Request for Leave to Amend

██ In addition to challenging the Court's dismissal of this action, Patton Boggs seeks to add an additional claim of tortious interference based on the traditional formulation employed in § 766 of the Restatement. But, while Patton Boggs is correct that leave to amend should be "freely give[n] when justice so requires," FED.R.CIV.P. 15(a), a party seeking to add new claims under Rule 15 after a judgment dismissing the underlying action "must first satisfy Rule 59(e)'s more stringent standard." *Firestone*, 76 F.3d at 1208. As described above, Patton Boggs has failed to do so. Accordingly, this action remains terminated and the Court will not consider Patton Boggs's request for leave to amend under Rule 15(a). *See id.*

(denial of leave to amend in such a case cannot be an abuse of discretion unless District court "abused its discretion in failing to vacate the original dismissal").

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Patton Boggs has failed to establish the "clear error or manifest injustice" that is required to justify the relief it seeks. *See Anyanwutaku*, 151 F.3d at 1057. The Court will not at this time address the fact that Patton Boggs has taken the unusual step of filing, along with its motion for reconsideration, a new complaint in a separate action presenting the same claims that were dismissed in this case, along with another tortious interference claim. *See Patton Boggs*, No. 11–0799. Although Chevron suggests that the Court would be within its power to dismiss that case *sua sponte, see* Def.'s Opp'n to Pl.'s Mot. for Recons. at 1, n. 1, the Court believes that the proper course is to give full consideration to the arguments made by the parties regarding Chevron's pending motion to dismiss that action.

Accordingly, it is this 8th day of July 2011 hereby

**ORDERED** that plaintiff's motion for reconsideration and for leave to file a second amended complaint [# 37] is **DENIED.**